*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBIN SILAS and ERIN SILAS,

        Plaintiffs-Appellants,

v

PAM REILLY, SHAVON ROMITA, and
CROSSING PATHS,

        Defendants-Appellees.

UNPUBLISHED
October 19, 2023

No. 363947
Oakland Circuit Court
LC No. 2022-191966-NZ

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

MURRAY, P.J. (*concurring in part, dissenting in part*).

The majority opinion correctly holds that defendants were not entitled to statutory immunity under MCL 722.625, as the plain terms of the statute do not cover the statements made to the guardian ad litem (GAL). It also correctly holds that defendants are not entitled to quasi-judicial immunity for these statements under the common law as it now stands. I write separately, however, to encourage the Legislature or the Supreme Court—the two bodies constitutionally enabled to alter the common law, *People v Woolfolk*, 304 Mich App 450, 487-488; 848 NW2d 169 (2014)—to remedy this situation by either the Legislature expanding the immunity provisions within the GAL statute, or the Court expanding the quasi-judicial immunity doctrine.

As the majority recognizes, the quasi-judicial immunity doctrine provides immunity for a person "[who] made statements or submissions in an underlying judicial proceeding." *Forton v St Clair Co Pub Guardian*, 339 Mich App 73, 82-83; 981 NW2d 103 (2021) (quotation marks and citation omitted). The Court in *Maiden v Rozwood*, 461 Mich 109, 134-135; 597 NW2d 817 (1999), explained the purpose of providing quasi-judicial immunity to witnesses:

> Further, witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as "those persons other than judges without whom the judicial process could not function." Witnesses who are an integral part of the judicial process "are wholly immune from liability for the consequences of their testimony or related evaluations." Statements made during

the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. Falsity or malice on the part of the witness does not abrogate the privilege. The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. As this Court noted in *Daoud v De Leau*, 455 Mich 181, 202-203; 565 NW2d 639 (1997):

> Witness immunity is also grounded in the need of the judicial system for testimony from witnesses who, taking their oaths, are free of concern that they themselves will be targeted by the loser for further litigation. Absent perjury of a character requiring action by the prosecuting attorney, the testimony of a witness is to be weighed by the factfinder in the matter at bar, not by a subsequent jury summoned to determine whether the first lawsuit was tainted[.] [Citations omitted.]

As we recounted many years ago in *Oesterle v Wallace*, 272 Mich App 260, 265; 725 NW2d 470 (2006), a decision affording quasi-judicial immunity to an attorney who made a statement in the context of a written settlement offer, the immunity for witnesses is expansive and should be "liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation." (Quotation marks and citation omitted.)

Because this is an expansively-applied doctrine, our Court has applied it to statements made in a prison misconduct report that led to administrative proceedings, *Couch v Schultz*, 193 Mich App 292, 296-297; 483 NW2d 684 (1992), to statements made by court-appointed psychologists, *Diehl v Danuloff*, 242 Mich App 120, 128-134; 618 NW2d 83 (2000), and to statements by the friend of the court, *Denhof v Challa*, 311 Mich App 499, 511; 876 NW2d 266 (2015). Additionally, in *Forton* this Court held that the doctrine applied to statements (some worn, others not) made by an employee of a county community health agency and an employee of a public guardianship entity who were investigating a claim that a court ward was being abused, concluding that "all of the claims asserted by plaintiff against Seals and Daniels-Hillman regarded either their testimony or statements made in the guardianship proceedings or actions that they took, while acting as an 'arm' of the court, to safeguard the interests of the legally incapacitated ward, NK. Such actions were an integral part of the guardianship proceedings." *Forton*, 339 Mich App at 84-85.[1]

What differentiates this case from those above is that none of the statements at issue were made in a courtroom, deposition, affidavit, or pleading, and they were not made by individuals (like the GAL) who were acting under court authority. In other words, the statements at issue were made by witnesses unaffiliated with the court system who provided information to the GAL, but only out of an obligation to assist an investigation, not because of a court order. To date, our courts

---

[1] See also *Kolley v Adult Protective Servs*, 786 F Supp 2d 1277, 1299-1301 (ED Mich, 2011) (holding that immunity applied to a GAL in guardianship proceedings involving a legally incapacitated adult).

have not extended quasi-judicial immunity to witnesses who voluntarily provide statements to a court-authorized actor during the course of an investigation. But at least two factors point towards a conclusion that it should.

First, the Supreme Court and this Court have emphasized that the doctrine "should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation." *Maiden*, 461 Mich at 134. If defendants are not afforded the immunity here, witnesses in the future may well hold back from providing relevant information to GALs, Friends of the Court, and others who are acting on behalf of courts in pending matters. As the *Maiden* Court recognized, witnesses provide vital information during the course of litigation and, without that free flow of information, the truth-finding function will be significantly hampered. *Id.* at 134-135. See also *Briscoe v LaHue*, 460 US 325, 330-334; 103 S Ct 1108; 75 L Ed 2d 96 (1983) (recognizing that, with respect to witnesses, the immunity is grounded in a public policy concern that the risk of lawsuits could discourage persons from providing evidence or shape their testimony, thereby impeding the judicial search for truth).

And this leads to the second factor, which is that for this very reason other courts have applied quasi-judicial immunity to witness statements made to attorneys and others who are conducting pretrial investigations. See, e.g., *Hawkins v Harris*, 141 NJ 207, 216; 661 A2d 284 (1995) ("The litigation privilege is not limited to statements made in a courtroom during a trial; it extends to all statements or communications in connection with the judicial proceeding.") (quotation marks and citation omitted); *Moses v McWilliams*, 379 Pa Super 150, 166; 549 A2d 950 (1988) ("Moreover, witness immunity should and does extend to pre-trial communications. The policy of providing for reasonably unobstructed access to the relevant facts is no less compelling at the pre-trial stage of judicial proceedings."); *Reenstierna v Currier*, 873 F3d 359, 364 (CA 1, 2017) ("New Hampshire has long recognized that statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions," and the privilege is not limited to statements made in "the walls of a courtroom.") (quotation marks and citations omitted).

Each of the foregoing courts have emphasized the strong policy factors that warrant granting immunity to witnesses who participate in pretrial matters. The court in *Collins v Walden*, 613 F Supp 1306, 1315 (ND Ga, 1985), expressed why immunity should be granted to all witnesses who provide relevant information during the truth-gathering process of litigation:

> In addition, it appears to the court that the policies which support immunity for witnesses also support immunity for other participants in the judicial process. The truth-seeking function of the court demands evidence. Yet evidence does not present itself to the court. It must be located, organized, and understood by the attorneys before it can be presented to the court. This process of discovering, organizing, and understanding evidence is a vital part of the judicial process. It is perhaps more essential to the court's truth-seeking function than the actual trial for without it there would be no grist for the mill. The search for evidence often requires interviews with persons who may not actually testify at trial but who are nonetheless important to the process because they might know of someone else whose testimony would be more helpful. The possibility that they may be forced to defend a lawsuit for damages can only discourage such people from becoming involved. The court's need for evidence demands that *all* participants in the process

of gathering evidence for use at trial be immune from any liability for damages for their part, however small, in that process.

The Second Restatement of Torts also states that a witness's statement to an attorney while gathering information is protected by the privilege. See Restatement (Second) of Torts § 588 (1977) ("The rule stated in this Section protects a witness while testifying. It is not necessary that he give his testimony under oath; it is enough that he is permitted to testify. *The privilege also protects him while engaged in private conferences with an attorney at law with reference to proposed litigation, either civil or criminal.*") (emphasis added).

The statements at issue here were made during a judicial proceeding, were relevant to what the GAL was ordered to investigate, and were important to the fact-gathering process. People in defendants' position, who are asked to cooperate with a GAL investigating important issues in a child-custody proceeding, should not face the prospect of litigation over the unsworn statements they made in furtherance of the investigation and litigation.[2] I would urge the Legislature to amend the statutes governing guardian ad litems and lawyer-guardian ad litems[3], or the Supreme Court to alter the common law quasi-judicial immunity[4] to cover these situations.


/s/ Christopher M. Murray

---

[2] The threat of perjury has always been a good incentive in preventing false testimony. Though that particular threat would not apply to unsworn statements made pretrial, the judicial process should provide the opportunity to syphon out false statements to prevent their use at a hearing or trial where decisions will be made. For those that are not syphoned out, the witness's statement will then comprise sworn testimony subject to cross-examination and perjury sanctions.

[3] See, e.g., MCL 712A.13a and MCL 712A.17d.

[4] Or the court rules governing these types of proceedings. See MCR 5.401, *et seq.*